H4D5thoS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                    New York, N.Y.

              v.                             15 Cr. 740 (RA)

DWAYNE THOMAS,

              Defendant.

------------------------------x

                                             April 13, 2017
                                             3:10 p.m.

Before:

                    HON. RONNIE ABRAMS,

                                             District Judge


                         APPEARANCES

JOON H. KIM
     Acting United States Attorney for the
     Southern District of New York
BY:  RACHEL MAIMIN
     Assistant United States Attorney

DOAR, RIECK, KALEY & MACK
     Attorney for Defendant Thomas
BY: JAMES R. DeVITA
          -and-
THE LAW FIRM OF CESAR DE CASTRO, P.C.
BY: VALERIE A. GOTLIB

H4D5thoS

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your name for

3     the record.

4          MS. MAIMIN:  Good afternoon, your Honor.  Rachel

5     Maimin for the government.

6          THE COURT:  Good afternoon.

7          MR. DeVITA:  Good afternoon, your Honor.  James DeVita

8     for Mr. Thomas, and with me is Valerie Gotlib.

9          THE COURT:  Good afternoon.

10          Good afternoon to you, Mr. Thomas.

11          So this matter is on for sentencing in United States

12     versus Dwayne Thomas.  Sentencing was originally scheduled

13     for -- it was originally scheduled for back in September and

14     there was a time where the defendant considered whether he

15     wanted to withdraw his plea, then it was scheduled for January

16     27th but was adjourned to allow the government to provide the

17     Court with more information regarding recorded calls made by

18     the defendant at the MDC.

19          I have read all of the letters submitted from the

20     government and defense counsel on the issue related to the

21     calls.  In its most recent March 27th letter, the government

22     advised the Court that it's not in a position to prove by a

23     preponderance of the evidence whether the calls related to a

24     plot to harm or kill someone and has not unearthed any evidence

25     to corroborate the existence of such a plot.  Accordingly, the

H4D5thoS

1    government does not ask the Court to take such a potential plot

2    into account in sentencing Mr. Thomas and I will not do so.

3         Mr. Thomas pled guilty in May to conspiracy to commit

4    robbery in violation of 18, United States Code, Section 1951.

5    In connection with today's proceeding, in addition to the

6    letters regarding the calls, I have reviewed the following

7    submissions:

8         The Presentence Investigation Report dated July 28,

9    2016; Mr. Thomas' sentencing memorandum dated August 26, 2016;

10   his supplemental submissions dated October 7th, 2016, January

11   17th, and April 11th.  I also have the government's submission

12   filed on October 5th.

13        I understand that there is another letter.  Do you

14   want to tell me who this is submitted from?

15        MR. DeVITA:  Yes, your Honor.

16        I just received it this afternoon and I have given a

17   copy to Ms. Maimin.  It is a letter from Felicia Williams, who

18   is the mother of Mr. Thomas' daughter.  Ms. Williams is not

19   present in court; her mother is and the daughter is.

20   Ms. Williams sent this to me this afternoon.

21        THE COURT:  All right.  Thank you.  I will file this

22   on the docket.

23        MR. DeVITA:  Thank you, your Honor.

24        THE COURT:  If there are any objections to that or

25   anything needs to be redacted -- I don't see any personal

H4D5thoS

1  information on it so I don't think so, but you will let me

2  know.

3          MR. DeVITA:  I think there is -- I don't think it

4  mentions the name of any minor child or anything.

5          THE COURT:  Okay.

6          MR. DeVITA:  Actually, it does mention the name of the

7  daughter.

8          THE COURT:  Why don't you redact it and put it on the

9  docket please, Mr. DeVita.

10          MR. DeVITA:  Yes.  I will file it on ECF.

11          So, Mr. Thomas, I gave you the opportunity to consult

12  with Mr. Peabody, another attorney with respect to whether you

13  seek to withdraw your plea.  I just want to confirm that you

14  are not seeking to withdraw your plea and you are ready to

15  proceed with sentencing today; is that correct?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  All right.

18          So, let's begin by discussing the presentence report.

19  Mr. DeVita, have you reviewed the presentence report and

20  discussed it with your client?

21          MR. DeVITA:  I have, your Honor.

22          THE COURT:  And, Mr. Thomas, have you had the

23  opportunity to discuss the presentence report with your

24  attorneys?

25          THE DEFENDANT:  Yes, your Honor.

H4D5thoS

1            THE COURT:  Do you have any objections to the

2      presentence report?

3            MR. DeVITA:  No, your Honor.

4            THE COURT:  Ms. Maimin, does the government have any

5      objections?

6            MS. MAIMIN:  We do not.

7            THE COURT:  I will just note there was one mistake in

8      the last line of paragraph 14 which indicates that the base

9      offense level, it is just a typo, I think.  It says the base

10      offense level under 2A1.1 is 40, but as you can see, later on

11      that line it is 43.  So, that's a minor error.  Unless there is

12      an objection, I will correct it.

13            MS. MAIMIN:  No objection.

14            MR. DeVITA:  No objection, your Honor.

15            THE COURT:  In paragraph 10 it states that there is no

16      identifiable victim.  Ms. Maimin, do you view that this way?

17            MS. MAIMIN:  No.

18            THE COURT:  I mean, is Mr. Pratt a victim?

19            MS. MAIMIN:  Well, I assume they were taking that very

20      literally to mean Mr. Pratt being the victim maybe because he's

21      not here, but of course Mr. Pratt is a victim, as is his

22      family, two members of which are here again today.

23            THE COURT:  I want to thank any of the victim's family

24      members for being here and I will give them an opportunity to

25      be heard if they would like to be heard.

H4D5thoS

1          So, the presentence report is adopted.  The factual

2     findings in the report are adopted.  They will be made a part

3     of the record in this matter and placed under seal.  If an

4     appeal is taken, counsel on appeal may have access to the

5     sealed report without further application to the Court.

6          So, why don't we talk about the sentencing guidelines.

7     And for those of you that are here, the guidelines are a set of

8     rules that are designed to guide judges when imposing

9     sentences.  At one time they were mandatory, meaning the judges

10    were required to follow them.  The guidelines are no longer

11    mandatory or binding on judges.  Nonetheless, judges must

12    consider them in determining an appropriate sentence and, thus,

13    we must ensure that they've been properly computed.

14         Do the parties agree with the guidelines analysis in

15    the presentence report pursuant to which Mr. Thomas is facing a

16    guidelines range of 240 months in prison?

17         MS. MAIMIN:  We agree with the calculation.

18         MR. DeVITA:  No objection to it, your Honor.

19         THE COURT:  So, based on the parties' agreement and my

20    independent evaluation of the Sentencing Guidelines, I accept

21    the guidelines calculation in the presentence report, I find

22    that Mr. Thomas' total offense level is 40, his Criminal

23    History Category is IV, and his recommended guideline sentence

24    in light of the statutory maximum is 240 months in prison.  As

25    I said a moment ago, that range is only advisory.  Courts may

H4D5thoS

impose a sentence outside of that range based on one of two

legal concepts -- a departure or a variance.  A departure

allows for a sentence outside of the advisory range based on

some provision of the guidelines themselves -- and for all of

you who don't know, this is what the guidelines that I have

been referring to look like -- but, I understand from the plea

agreement that neither party believes that a departure is

warranted; is that correct?

MS. MAIMIN:  Yes, Judge.

MR. DeVITA:  That's correct, your Honor.

THE COURT:  Nonetheless, I have considered whether

there is an appropriate basis for departure from the advisory

range within the guideline system, and while recognizing that I

have the authority to depart, I do not find any grounds

warranting a departure.

I also have the power to impose a non-guideline

sentence based on what we call a variance and will consider the

parties' arguments as to whether the sentence in this case

should be consecutive, concurrent, or partially concurrent to

Mr. Thomas' undischarged term of imprisonment.  So, I will

consider those arguments today.

So, let's start with the government.  Ms. Maimin,

would you like to be heard first?  Would any of Mr. Pratt's

loved ones like to be heard today?

MS. MAIMIN:  Yes, your Honor.  His mother, Stephanie

H4D5thoS

1    Pratt, respectfully requests to address the Court pursuant to

2    the victims' rights act.  If the Court wishes to hear from

3    Ms. Pratt first or I can speak, it is up to the Court.

4              THE COURT:  Whatever you would like.

5              MS. MAIMIN:  Why don't I speak first, your Honor, and

6    then she can speak.

7              THE COURT:  Okay.

8              MS. MAIMIN:  We ask for a sentence that is wholly

9    consecutive to the sentence that the defendant is serving right

10   now for two main reasons.  One, as stated in our memorandum,

11   murder is different.  As bad as it was that Dwayne Thomas was

12   on a robbery spree where he tortured and shot at victims, and

13   stole from them, and terrified them, and terrorized a

14   community, it is different to commit murder and that is what he

15   stands before the Court today having committed.  It is

16   different both factually and legally in the context of this

17   case.  One of Thomas' main arguments for concurrent time is,

18   essentially, that he has already been punished for this

19   conduct, but that is belied by the arguments he made himself

20   before Judge Pauley when he, over the objection of the

21   government, succeeded in convincing Judge Pauley only to

22   sentence him on two specific robberies in connection with a

23   robbery conspiracy.  Nothing to do with this murder, did not

24   come up at this sentencing --

25             THE COURT:  Didn't, actually, Judge Pauley

H4D5thoS

specifically note -- and I have the transcript -- but he

specifically noted that no one was killed or seriously injured

in the commission of those offenses, correct?

          MS. MAIMIN:  That's correct, your Honor, and we were

not in a position to prove otherwise at that time by a

preponderance of the evidence or beyond a reasonable doubt.

Had it been otherwise, not only would there likely have been

additional charges, but at the very least his guidelines would

have been much higher for the robbery conspiracy; he would have

been facing the murder guidelines as he does today.  So, there

is evidence in the record --

          THE COURT:  So he would have been facing, I think as

you note in your letter, a guidelines range of life --

          MS. MAIMIN:  Yes.

          THE COURT:  -- if all of this conduct had been

presented at one time.

          MS. MAIMIN:  That's correct, your Honor.  We didn't

try to present evidence of the murder.  We tried to present

evidence of other robberies that were proven in the course of

the trial but which Judge Pauley did not think had been proven

beyond a reasonable doubt.  And to clarify what he was

sentencing the defendant on he said, *I am limiting it to these*

*robberies*.  And that was at the request of the defendant.

          So, it is wholly contradictory and wrong for the

defendant to come here and say, well, I've basically been

H4D5thoS

1    sentenced on the same conduct.

2            THE COURT:  You also note in your letter that there is

3    no evidence that the accomplice in this robbery, in which

4    Mr. Pratt was killed, was part of the defendant's robbery crew

5    in the case before Judge Pauley and that that robbery crew had

6    not yet been formed.

7            MS. MAIMIN:  That's true.

8            So, the best -- well, we don't know who that other

9    person is who was involved in the robbery but we had a

10   cooperating witness at trial who, like Thomas, was a core

11   member of the crew, and from his perspective the crew started

12   when that robbery conspiracy, as charged, started, which was

13   subsequent to this murder.  That person testified about all the

14   robberies the crew committed the whole time he was a member.

15   He is not aware of it existing before he was a member and this

16   did not come up, nor could it have, because it wasn't part of

17   the same crime.

18           Turning to this defendant, the Court is going to

19   consider his history and characteristics.  There is literally

20   nothing mitigating in his past as it comes to his history and

21   characteristics.

22           THE COURT:  What about his upbringing?

23           MS. MAIMIN:  His upbringing was not ideal by any

24   means, and I don't mean to belittle or minimize it, but it does

25   not come close to the tragedies that this Court sees for other

H4D5thoS

1    defendants.  It is just not even in the same realm.

2         The worst thing that he points to that happened to him

3    is that he had an affair, and since he was young I would call

4    it a nonconsensual affair, with an older woman, but the abuse,

5    the drug abuse, the physical abuse, drug abuse, sexual abuse,

6    neglect, it is just not present here.  If it were, it would be

7    different.  He has never had a job.  His worst medical

8    condition is acid reflux.  There is nothing about him that can

9    excuse, explain, or justify why his entire life has been

10   dedicated not just to dealing drugs but to savage, brutal

11   violence on other people.  That's why incapacitation is really

12   our main goal for this defendant today.

13        THE COURT:  When I think about how much time should be

14   concurrent or consecutive, how long do you have to incapacitate

15   someone who was indisputably dangerous in their early to

16   mid-20s?  Do you have to do it until their 50s?  Do you have to

17   do it until they're in their 60s?  At what point does that no

18   longer become a danger?

19        I know that is a hard question to answer.

20        MS. MAIMIN:  And I have read social science literature

21   about it, I am sure the Court has been presented that kind of

22   literature in other cases.  I think it is a subjective

23   decision.  I know that is not necessarily helpful when the

24   Court is fashioning a sentence, but the Court has to take a

25   holistic view.  There are defendants where there are glimmers

H4D5thoS

1   of hope.  A glimmer of hope might be, for instance, they didn't

2   have something as minor as not having a disciplinary history in

3   jail -- which this defendant does -- something as minor as,

4   well, maybe they weren't gainfully employed their whole life

5   but they had some job, there was some hope for them that they

6   wanted to change their life but there is no evidence of that

7   here.  So, from our perspective, it's as long as possible.

8           At some point the community's interest and the

9   interests of justice for the victims have to outweigh other

10  factors in this case because there is no -- he has given us no

11  hope whatsoever that he wants to change his life, that he has

12  changed his life, that he is even capable of changing his life.

13          The instance with Judge Pauley wasn't his first run-in

14  with the law, he has had prior gun offenses, prior offenses

15  involving violence and he just kept going.  One of the most

16  troubling aspects of the instant offense is reflected in

17  paragraph 9 of the PSR.  Thomas would brag about what happened

18  to the Victim Pratt and he used the phrase "respect the jux."

19  "Jux" is Jamaican patois for a robbery.  That means victims of

20  robbery should not attempt to fight back or resist.

21          So, Thomas' take-away from this murder wasn't, *oh my*

22  *goodness, I didn't caught, maybe this was a near miss for me, I*

23  *should change my life.*  It was, *He didn't respect the jux.*  And

24  then he went on to commit this stream of robberies that he was

25  convicted of before Judge Pauley.

H4D5thoS

1          This is not the mindset of a person who has a place in

2     a civilized society.

3          THE COURT:  How should I factor in the fact that he

4     was -- how old was he at the time of this offense?  21.

5          MR. DeVITA:  20, your Honor.

6          THE COURT:  20.

7          MS. MAIMIN:  Well, it would -- unfortunately, a lot of

8     the offenders committing violent crimes in these days are men

9     in their early 20s so it doesn't really distinguish him.  But

10    leaving that aside, if this is what he did and it was almost

11    like a youthful indiscretion, that's a light way of putting it,

12    but went on to lead a normal life -- and this happens -- and

13    then gets caught later on, there would be a huge argument

14    before your Honor that he has already changed his life.  But it

15    didn't just reflect his youth because he continued committing

16    crimes for years after that.  So, it wasn't something that was

17    a mistake of youth, it was a meaningful and accurate predicter

18    of his future crime.  And that's not even taking into account

19    that this wasn't his first crime, that he had been committing

20    crimes before.

21         So, when you take any of those factors independently,

22    sufficiently, they all suggest a consecutive sentence is

23    appropriate in this case for the purpose of incapacitation.

24         I am happy to answer any further questions of the

25    Court or, if not, I would ask that Ms. Pratt have the

H4D5thoS

1    opportunity to address the Court.

2             THE COURT:  Yes.

3             Ms. Pratt?  Would you come up and speak into the

4    microphone, please, so I can hear you?

5             First of all, I want to thank you for being here.  I

6    know you have been here twice before.  I don't normally adjourn

7    sentences and I am sorry to have made you come back.  I respect

8    your time.  It is very important that you are here today so,

9    please, say whatever you would like to say.

10            MS. PRATT:  How you doin', your Honor, and yes, this

11   is very trial-some when you working every day and you have to

12   come see a person that took my baby away from me.  I don't know

13   why.  I really don't know why.  Because I loved him.  He was

14   going to be somebody.  He already got a child that turned 10

15   years old.  He didn't get the chance to grow up with his

16   father.  You understand?

17            And my mother is taking it hard, too.  That was her

18   first grandson, you know?  She's got seven but now she only

19   got -- I lost another son last year, September, you know.  But,

20   I love my son very much.  It's hard, you know, to think about

21   him sometime, that's why I continue working, working, working,

22   to get it off my mind.

23            To think that you shot my son four times.  Four times.

24   Respect?  You took another person, you took my baby.  I don't

25   know if that's your baby right there but that's my baby.  Do

H4D5thoS

1    you understand?  It hurts and this is the first time I ever

2    come out and talk about it.

3         And I love him.  Do you understand?  I love my third

4    son I lost last year and you don't know what I'm going through.

5    Nobody don't know but he shot my son four times.

6         Four times.  Why?  He wasn't the richest boy in life.

7    What did he have that you didn't have?  You don't have nothing.

8    You still surviving on this earth, day by day, we surviving.

9    You know?  We don't have to steal from each other.

10        And, your Honor, he should get life.  He took a life.

11   He took my baby.  Do you understand?  If I took somebody else's

12   life I deserve to do a life.

13        That's all I have to stay.

14        THE COURT:  Thank you for coming in today.

15        MS. PRATT:  I hope -- thank you.  Thank you.

16        THE COURT:  Mr. DeVita, would you like to be heard

17   today?

18        MR. DeVITA:  Yes, I would, your Honor.  Thank you.

19        Your Honor, I'm not going to deny that my client was

20   involved in a terrible, terrible incident.  I'm not going to

21   deny that Ms. Pratt has suffered a terrible loss and pain.  The

22   issue -- I would like to point out he was not the shooter.  I'm

23   not saying --

24        THE COURT:  I am aware of that.

25        MR. DeVITA:  I'm not saying that that means his

H4D5thoS

```
1    conduct wasn't reprehensible but he was not the one that put
2    the four bullets in Ms. Pratt's son, and in fact he was shot
3    himself in the incident by the other perpetrator.  I'm not
4    trying to equate his injury with Mr. Pratt's, obviously, but.
5            Your Honor, the legal issues have been addressed,
6    whether your Honor has the authority to impose concurrent
7    sentences.  I think our position is clear, I don't need to
8    rehash that.  I think that --
9            THE COURT:  Let me just ask you one legal question.
10           MR. DeVITA:  Yes.
11           THE COURT:  Which is I would like you to clarify when
12   I'm deciding whether to have this sentence run consecutive or
13   concurrent, if you are asking that I rely on 5G1.3B or D.  So,
14   are you arguing legally that it is relevant conduct or is it --
15           MR. DeVITA:  Your Honor, we signed a -- and I think
16   Ms. Maimin misinterpreted our argument.  I was not repudiating
17   our sentencing guideline stipulation.  We did not say that it
18   is relevant conduct.  It is really part of a chain of events
19   that -- I mean, I think that the government would have to
20   concede that this was a fluid group of people that were
21   involved in these robberies and it was not years and years,
22   your Honor.
23           Mr. Thomas was arrested at 24 and he has been in jail
24   for five years.  And that's not to say that the four-year
25   period isn't significant, but what I am saying is that the
```

H4D5thoS

1    government makes it sound like he went on until he was into his

2    30s in this conduct.  He has been in custody for five years and

3    that he has undergone a change and he is trying to become, to

4    move in the direction of being a valuable citizen.  Your Honor

5    is seeing some of the courses he has taken in trying to achieve

6    that but, in terms of the legal sense, we are not arguing that

7    your Honor is bound by the guidelines to treat it as relevant

8    conduct.  We are submitting that it is part of an ongoing

9    pattern of conduct that is related.

10            I would argue that the *Jones* case is still good law.

11    If your Honor looked at -- I don't know whether your Honor did

12    or not, the *Dean* case that the Supreme Court just recently

13    decided.

14            THE COURT:  It did.

15            MR. DeVITA:  In *Dean*, it doesn't bear directly on the

16    case but the Supreme Court said if Congress wants to make it

17    explicit that certain things cannot be taken into account in a

18    case involving 924(c), Congress can do that.  They know how to

19    do that.  Our submission is they have not done so here as the

20    *Jones* Court said it is ambiguous and therefore the Rule of

21    Lenity applies.  That's just a question of your Honor's

22    authority.  If your Honor were to determine that you didn't

23    have the authority -- frankly, I don't think it is an

24    appealable -- either side is going to be able to appeal this

25    because our plea agreement has a waiver of the right to appeal

H4D5thoS

for both sides and it specifically says that the parties agree
that if the sentence is -- the waiver applies to whether the
sentence is concurrent or consecutive.

So, both the government and the defendant, I believe,
are bound by that. So, your Honor's decision on that legal
issue, I think, will at least in this case, not be reviewed.
But that doesn't answer the real question which is why the
sentence of 49 years is excessive in this case.

Your Honor, has pointed to the youth --

THE COURT: I'm sorry. You said 49. He got 19 --

MR. DeVITA: I meant 39. 39. It would be 39 years if
this sentence were consecutive, completely, to the sentence
imposed by Judge Pauley.

Your Honor pointed to Mr. Thomas' youth at the time.
It is 10 years ago that these tragic events occurred and your
Honor has pointed out that he was 20 years old at the time.
There is more than significant literature on the lack of
development of the brain for people of that age and here it is
even more accelerated or it is more accentuated in Mr. Thomas'
case.

The government makes light of the background that your
Honor brought up of Mr. Thomas' upbringing but he came to this
country at 11 years old and was basically on his own at 14. He
was in a home where he was not really welcome. He was on his
own out on the street -- or living in Pennsylvania with a woman

H4D5thoS

1    twice his age for a period of time starting at age 14.  He did

2    not have the kind of guidance that might help him develop the

3    kinds of processes to really evaluate and make judgments.  He

4    obviously exercised terrible judgment in numerous instances

5    reflected in both this case and in the prior case.  And I am

6    not seeking to excuse his conduct, I am simply trying to put it

7    into context.

8             He was -- his father was shot in front of him at age

9    8.  I think we pointed that out.  His father was not killed but

10   he was shot and almost killed.  He started -- Mr. Thomas

11   started using drugs following peer pressure at age 10 or 11, he

12   started using marijuana.  His stepbrother was murdered when he

13   was 14 years old.  I believe that had a huge impact on his

14   life.  And he has been on his own, as I said, on the street,

15   since he was 14.

16            These are factors that go into evaluating the conduct

17   that is before your Honor.  His role in the offense, as I said,

18   he was not the shooter.  That doesn't mean he is not legally

19   responsible and morally responsible; he was part of the team

20   that went in to commit the robbery but he did not shoot

21   Mr. Pratt.

22            He has shown in the time --

23            THE COURT:  He was also holding a gun during the

24   incident.

25            MR. DeVITA:  I'm sorry, your Honor?

H4D5thoS

1          THE COURT:  He was also holding a gun during the

2     incident.

3          MR. DeVITA:  Yes, your Honor, he was.  I accept that

4     and that is absolutely correct.  And that's something your

5     Honor needs to consider.  I don't qualify that in any way.

6          But, you know, we have reached a point, your Honor,

7     and this is beyond Mr. Thomas and beyond this specific case,

8     and I have cited to your Honor former Attorney General Holder's

9     speech and Judge Gleeson's moving opinion that points out that

10    we have a terrible problem in our judicial system of

11    over-incarceration, mass incarceration, and it is a problem

12    particularly for men of color, and it is a problem that has to

13    have someone to address it.  I think that current developments

14    in the Department of Justice and the overall tenor of what is

15    likely to occur going forward makes me very pessimistic.  But,

16    in each individual case, Courts need to bear in mind where we

17    have come to the point where we have 5 percent of the world's

18    population but 25 percent of the world's prisoners.  And that

19    that has to be addressed and a prison sentence of the length

20    that the government is advocating, when it is highly unlikely

21    that he would receive that long a sentence if he were

22    prosecuted in state court, the 25 to life would have been the

23    maximum.  It is unlikely that he would have, since he was not

24    the shooter, would have been required to plead guilty to the

25    top count and the federal system, for whatever reason, has

H4D5thoS

1  basically, in many instances, supplanted the Courts of the

2  Bronx for cases like this.

3       THE COURT:  Here we have a -- I don't disagree with

4  you about mass incarceration.  Here, first of all, we have a

5  20-year max which is also the guideline sentence.  Right?  So

6  we are not talking for this crime, for this murder, about

7  anything over the 20 years.  That's not even on the table.

8       The question is in this case, where a man's life was

9  taken, with someone with an incredibly violent and violent acts

10  in his past -- I understand they occurred after this incident

11  but prior to this sentencing today -- that showed complete

12  disregard for humanity, for health and safety of other people.

13  There is a level of cruelty that seems so unnecessary, among

14  other things.  The question is what do we do in a case like

15  this?  What do I do in this case when I have to, of course,

16  sentence someone to a sentence that is sufficient but not

17  greater than necessary but I have got to promote respect for

18  the law, I have got to prevent this particular man from hurting

19  other people.  I have got to consider deterrence both for him

20  and for others -- making all the arguments that you are very

21  familiar with.

22       MR. DeVITA:  I understand that, your Honor, and I

23  submit to you that a sentence -- an aggregate sentence of 39

24  years is more than necessary to make those statements.  For

25  specific or general deterrence, I think that your Honor brought

H4D5thoS

1   up a very -- and I think we mentioned it in our written

2   submissions, a very good point that at the age at which he

3   would be released, if your Honor imposed at least a partially

4   concurrent sentence, the recidivism rate of inmates leaving

5   incarceration at the age that he would be is far lower than for

6   men in their 20s and I think that's something that goes into

7   the determination than what is necessary and what is more than

8   necessary.

9           I submit to you I think that there are ways to fashion

10  a sentence that accomplishes all of those things but isn't

11  unduly punitive, isn't unnecessarily vindictive.  This

12  defendant has been pursued vigorously, and not to say that he

13  is an angel, but I think that he has the ability to make

14  progress and to turn around his life if we give him that

15  opportunity.  And if your Honor sees fit to give him a sentence

16  of something that allows him to come home while he still has a

17  life -- aside from everything else he is going to be

18  deported -- we know that, that the necessity of a 39-year

19  sentence just isn't there.

20          THE COURT:  Thank you.

21          MR. DeVITA:  Thank you, your Honor.

22          THE COURT:  Mr. Thomas, I read your letter but if you

23  want to say anything today you have the opportunity to do so.

24  Just speak into the microphone so I can hear you, please.

25          THE DEFENDANT:  Yes, your Honor.

H4D5thoS

| | |
|---|---|
| 1 | If your Honor give me a chance to, I would like to |
| 2 | apologize to the victim's family of loss of their loved one.  I |
| 3 | am truly really sorry that her son had lost his life and if she |
| 4 | could accept my apology that I know -- |
| 5 | THE COURT:  Can you speak a little louder, please? |
| 6 | Thank you. |
| 7 | MR. DeVITA:  May he step to the -- |
| 8 | THE COURT:  Is it okay with the marshals? |
| 9 | THE MARSHAL:  No, Judge. |
| 10 | THE COURT:  So why don't we just move the microphone |
| 11 | closer. |
| 12 | MR. DeVITA:  May he be seated, your Honor?  He will be |
| 13 | able to speak into the microphone. |
| 14 | THE COURT:  Yes, he can be seated. |
| 15 | THE DEFENDANT:  Again, your Honor, I want to apologize |
| 16 | to the victim's family for losing a loved one and hopefully the |
| 17 | victim's moms and family can accept the apology of me |
| 18 | apologizing of her losing a loved, which I feel her pain that |
| 19 | she lost her loved one.  And I'm really sorry that she lost her |
| 20 | loved one, but -- I'm a little bit nervous right now, your |
| 21 | Honor, so if I could take a second? |
| 22 | THE COURT:  Take your time. |
| 23 | THE DEFENDANT:  I really -- I appreciate you, your |
| 24 | Honor, for the time that the Court give us -- I'm a little bit |
| 25 | nervous right now, your Honor. |

H4D5thoS

1          THE COURT:  That's okay.

2          THE DEFENDANT:  I would like to apologize to the

3    victim's family and hopefully they accept my apology.

4          THE COURT:  Thank you.  What I am going to do is take

5    a break for a minute or two and come back out.  All right?

6    Thank you.

7          (Recess)

8          THE COURT:  Is there any reason why sentence cannot be

9    imposed at this time?

10          MS. MAIMIN:  No, your Honor.

11          MR. DeVITA:  No, your Honor.

12          THE COURT:  So, under the law, I am required to

13    consider the advisory guidelines range of 240 months, as well

14    as various other factors that are outlined in 18, United States

15    Code, Section 3553(a), and I have done so.

16          You took a life, Mr. Thomas.  You didn't shoot the gun

17    yourself but you were a critical part of it.  Jermaine Pratt's

18    loved ones will never see him again, they won't hold him, they

19    won't have him in their lives, and I want you to think about

20    that every day for the rest of your life.

21          And what did you do this for?  For what?  You not only

22    engaged in criminal conduct before that incident having been

23    convicted of possession of a Ruger .9 millimeter at the age of

24    17, but simply heinous criminal conduct including your

25    participation in the robbery crew that terrorized and viciously

H4D5thoS

tortured its victims.  And you apparently learned nothing and

must have felt nothing after having killed this young man to go

on to engage in that conduct for so many years.  Apparently

not.

       According to the PSR, and as noted here today, in

recounting what happened to Mr. Pratt, I am told that you used

the phrase "respect the jux" meaning that victims of robbery

should not attempt to fight back.  Instead of feeling remorse

or sadness or regret, that's the action we have heard about.

And that's not your only conviction.  This offense represents

your fifth criminal conviction, four of which were for

felonies.  You have had numerous sanctioned incidents in the

Bureau of Prisons.

       I know that your life has been devoid of opportunity.

It has been filled with both tragedy and serious challenges but

that simply isn't an excuse.  There are lots of people in this

courtroom and outside that go through terrible things in their

life and they don't do the horrific things that you have done.

A very serious sentence needs to be imposed to reflect the

seriousness of this offense, promote just punishment, afford

adequate deterrence to criminal conduct, and protect the public

from future crimes.  In determining how to apply these factors,

I agree with the government that murder is different.

       So, Mr. Thomas, please rise for the imposition of

sentence.

H4D5thoS

1          It is the judgment of this Court that you be committed

2     to the custody of the Bureau of Prisons for a term of 240

3     months, 180 months of which is to run consecutive to your

4     undischarged term of imprisonment.  So, to be clear, if

5     Mr. Thomas has 14 years -- or however much it is, it may be a

6     little bit less now -- left undischarged on his sentence with

7     Judge Pauley, this term of 180 months is to run consecutive or

8     on top of that undischarged term including the 84-month

9     sentence on the prior 924(c).  In doing so, I have accounted

10    for the additional delay in Mr. Thomas' sentence occasioned not

11    only by the issue of the nature of the MDC calls, but in the

12    time I gave him to determine whether he wanted to withdraw his

13    plea.  As a result of this, I need not decide the legal

14    question as to whether 924(c)(1)(D)(2) precludes me from

15    running this sentence concurrently to the 84-month sentence

16    that Judge Pauley imposed on Count Four which was a violation

17    of 18, United States Code, Section 924(c)(1)(A)(2) because I

18    think that this is a reasonable and appropriate sentence.

19          If you would like to be seated I will impose the rest

20    of the sentence.

21          First of all, I want to note for the record that I

22    believe this sentence is sufficient but not greater than

23    necessary to comply with the purposes of sentencing set forth

24    in 18, United States Code, Section 3553(a).  I also believe

25    that this partially concurrent sentence best achieves a

H4D5thoS

reasonable punishment consistent with 5G1.3D and 18 U.S.C.

3584.  Although the crime is similar in nature to the crimes

for which Judge Pauley sentenced this defendant, now we also

have the murder of a young man and the sentence simply must

reflect that.

            Even though Mr. Thomas will be deported, I am

nonetheless going to impose a term of supervised release of

three years.  All the standard conditions of supervised release

shall apply.  The mandatory conditions shall also apply:  The

defendant shall not commit another federal, state, or local

crime; he shall not illegally possess a controlled substance;

he shall not possess a firearm or destructive device.

            The mandatory drug testing condition is suspended due

to the imposition of a special condition requiring drug

treatment and testing, and he shall cooperate in the collection

of DNA as directed by the probation officer.

            In addition, I am imposing the special conditions of

supervision in light of the nature of the crime and his

personal history and immigration status.  He shall participate

in an outpatient treatment program approved by the United

States probation office which may include testing to determine

whether he has reverted to using drugs or alcohol.  He shall

contribute to the costs of services rendered based on his

ability to pay and the availability of third-party payments.

The Court authorizes the release of available drug treatment

H4D5thoS

1    evaluations and reports including the Presentence Investigation

2    Report to the substance abuse provider.

3            He shall obey the immigration laws and comply with the

4    directives of immigration authorities.

5            He shall submit his person, residence, place of

6    business, vehicle, and any property or electronic devices under

7    his control to a search on the basis that the probation officer

8    has a reasonable suspicion that contraband or evidence of a

9    violation of the conditions of the defendant's supervised

10    release may be found.  The search must be conducted at a

11    reasonable time and in a reasonable manner.  Failure to submit

12    to a search may be grounds for revocation.  He shall inform any

13    other residents that the premises may be subject to search

14    pursuant to this condition.  He is to report to the nearest

15    probation office within 72 hours of release from custody if in

16    fact he is released prior to immigration detention.  And, he is

17    to be supervised in the district of his residence.

18            I decline to impose a fine because the probation

19    office has reported that he is unable to pay one.

20            I am required to impose the mandatory special

21    assessment of $100 which shall be paid immediately.

22            Is the government seeking restitution or forfeiture?

23            MS. MAIMIN:  No, we are not.

24            THE COURT:  None will be ordered.

25            Does either counsel know of any legal reason why this

H4D5thoS

1    sentence cannot be imposed?

2              MS. MAIMIN:  No, your Honor.

3              MR. DeVITA:  No, your Honor.

4              I just, if I may as to clarify?  I think I heard it

5    correctly, I just want to make sure.

6              THE COURT:  Yes.

7              MR. DeVITA:  I think your Honor said 240 months total,

8    180 of those months to be consecutive meaning that 60 months

9    will be concurrent to the ongoing sentence?

10             THE COURT:  That's correct.

11             MR. DeVITA:  Thank you, your Honor.

12             THE COURT:  And the part that it is consecutive to is

13   in part the 84-month sentence on the underlying 924(c) and, as

14   a result, I don't think there is a need for me to rule on the

15   legal issue that is at hand.

16             MR. DeVITA:  I understand.

17             THE COURT:  That is the sentence of this Court.

18             Mr. Thomas, you have a right to appeal your conviction

19   and sentence except to whatever extent you may have validly

20   waived that right as part of your plea agreement.  If you do

21   choose to appeal, the notice of appeal must be filed within 14

22   days of the judgment of conviction.  If you are not able to pay

23   the costs of an appeal, you may apply for leave to appeal in

24   forma pauperis, which simply means the Court costs such as

25   filing fees will be waived.  If you request, the Clerk of Court

H4D5thoS

 1   will prepare and file a notice of appeal on your behalf.

 2           Are there any open counts against the defendant?

 3           MS. MAIMIN:  Yes, and we respectfully move to dismiss

 4   them at this time.

 5           THE COURT:  All right.  They will be dismissed.

 6           First of all, Ms. Pratt, I want to tell you how sorry

 7   I am for your loss.  I want to thank you again for being here

 8   today.

 9           Mr. Thomas, as I said to you before, I know you have

10   had some struggles in your life but there is simply no excuse

11   for your conduct.  You are going to have a lot of time to think

12   about what you have done and who you have hurt.  I hope that at

13   some point in your life you will come to really recognize the

14   harm that you have caused and make a decision to be a different

15   person going forward, if for no other reason, than to set a

16   better example for your daughter than you have, to date.

17           Are there any other applications?

18           MS. MAIMIN:  Not by the government.

19           MR. DeVITA:  No, your Honor.

20           THE COURT:  All right.  We are adjourned.  Thank you.

21                              o0o

22

23

24

25