1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4         v.                    15 CR. 740

5    DWAYNE THOMAS,

6              Defendant.

7    ------------------------------x

8                               New York, N.Y.
                                May 6, 2016
9                               9:40 a.m.

10
     Before:
11
                              HON. RONNIE ABRAMS,
12
                         District Judge
13

14                            APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     RACHEL MAIMIN
17        Assistant United States Attorney

18   DOAR, RIECK, KALEY & MACK
          Attorneys for Defendant Defendant
19   BY:  JAMES R. DE VITA

20   SHER TRENONTE LLP
          Attorneys for Defendant Defendant
21   BY:  VALERIE ALICE GOTLIB

22

23

24

25

1              (Case called)

2              THE COURT:    Good morning.  Good morning to you,

3    Mr. Thomas.

4              So I understand, Mr. Thomas, that you wish to plead

5    guilty to Count One of the superseding information, a new

6    charge.  Is that correct?

7              THE DEFENDANT:    Yes.

8              THE COURT:    Before deciding whether to accept your

9    plea, I'm going to ask you certain questions so that I can be

10   sure you understand your rights and that you're pleading guilty

11   voluntarily and because you are guilty and not for some other

12   reason.

13             So it's important that you answer all of my questions

14   honestly and completely.  If at any time you want to speak to

15   your attorneys, just let me know.  And, if at any time you're

16   having trouble understanding something, let me know as well.

17             Ms. Cavale, please place Mr. Thomas under oath.

18             (Defendant sworn)

19             THE COURT:    You should know, Mr. Thomas, you're now

20   under oath.  So if you answer any of my questions falsely, you

21   could be charged with the separate crime of perjury.

22             Do you understand that?

23             THE DEFENDANT:    Yes, ma'am.

24             THE COURT:    I'm going to start by asking you questions

25   that I ask of all defendants who are seeking to plead guilty to

1  ensure that you're competent to plead guilty.

2         First of all, I'll just ask how old are you?

3         THE WITNESS:    Twenty-nine, ma'am.

4         THE COURT:    How far did you go in school?

5         THE DEFENDANT:    Ninth grade.

6         THE COURT:    Have you ever been treated or hospitalized

7  for mental illness?

8         THE DEFENDANT:    No, ma'am.

9         THE COURT:    Have you ever been addicted to drugs or to

10  alcohol?

11         THE DEFENDANT:    Marijuana, ma'am.

12         THE COURT:    Have you ever had any treatment for that?

13         THE DEFENDANT:    No, ma'am.

14         THE COURT:    Is there anything about that that affects

15  your ability here in court today to understand what's

16  happening?

17         THE DEFENDANT:    No, ma'am.

18         THE COURT:    In the past 24 hours, have you taken any

19  drugs, medicine, or pills or drunk any alcoholic beverages?

20         THE DEFENDANT:    No, ma'am.

21         THE COURT:    Is your mind clear today?

22         THE DEFENDANT:    Yes, ma'am.

23         THE COURT:    Does either counsel have any doubt as to

24  the defendant's competence to plead?

25         MS. MAIMAN:    No, your Honor.

1          MR. DE VITA:    No, your Honor.

2          THE COURT:    On the basis of Mr. Thomas' responses to

3    my questions and my observations of his demeanor here in court,

4    I find that he is fully competent to enter an informed plea of

5    guilty at this time.

6          Have you had enough time and opportunity to discuss

7    your case with your attorney, including the nature of the

8    charges, any possible defenses?

9          THE DEFENDANT:    Yes, ma'am.

10          THE COURT:    Has he discussed with you the consequences

11    of pleading guilty?

12          THE DEFENDANT:    Yes, ma'am.

13          THE COURT:    Are you satisfied with their

14    representation of you?

15          THE DEFENDANT:    Yes, ma'am.

16          THE COURT:    Now, I understand that you intend to plead

17    guilty to a charge contained in, as I said at the start, what

18    we call a superseding information, which is a document

19    containing a formal accusation brought by the government.  This

20    is a document that they seek to file.

21          Have you received a copy of the superseding

22    information?

23          THE DEFENDANT:    Yes, ma'am.

24          THE COURT:    Have you read it and discussed it with

25    your attorney?

1          THE DEFENDANT:    Yes, ma'am.

2          THE COURT:    So under our system of justice, before you

3   can be charged with a felony offense, a grand jury comprised of

4   peers from your community must decide whether there's probable

5   cause to believe an offense was committed and that you

6   committed it, and that decision may result in what's called an

7   indictment.

8          You should understand that by allowing the government

9   to charge you by way of this information, you're giving up your

10  right to be charged in an indictment.

11         Do you understand that?

12         THE DEFENDANT:    Yes, ma'am.

13         THE COURT:    I have here a number of waiver of

14  indictment forms.  I'm going to ask Ms. Cavale, my deputy, to

15  show you one of them.

16         Did you sign this waiver of indictment form?

17         THE DEFENDANT:    Yes, ma'am.

18         THE COURT:    Did you understand by doing that you were

19  giving up your right to proceed by way of indictment?

20         THE DEFENDANT:    Yes, ma'am.

21         THE COURT:    Were any threats or promises made other

22  than what's in the plea agreement to get you to waive

23  indictment?

24         THE DEFENDANT:    No, ma'am.

25         THE COURT:    I find that the defendant has knowingly

1    and voluntarily waived his right to be charged by a grand jury,

2    and I authorize the filing of the superseding information.

3              Now what I'm going to do, Mr. Thomas, is explain

4    certain constitutional rights that you'll be giving up in order

5    to plead guilty.

6              So first under the constitution and laws of the

7    United States, you have a right to plead not guilty to the

8    charge in the superseding information.

9              Do you understand that?

10             THE DEFENDANT:    Yes, ma'am.

11             THE COURT:    If you did plead not guilty, you would be

12    entitled, under the constitution, to a speedy and public trial

13    by jury of that charge.

14             Do you understand that?

15             THE DEFENDANT:    Yes, ma'am.

16             THE COURT:    In advance of trial, you would have the

17    opportunity to seek suppression of any or all of the evidence

18    against you on the basis that it was obtained in violation of

19    the constitution.

20             Do you understand that?

21             THE DEFENDANT:    Yes, ma'am.

22             THE COURT:    At trial you would be presumed to be

23    innocent.  That means that you would not have to prove that

24    you're innocent.  Instead, the government would need to prove

25    your guilt beyond a reasonable doubt before you could be found

1    guilty.

2         So even if you did nothing or said nothing at trial,

3    you could not be convicted unless a jury of 12 people agreed

4    unanimously that you are guilty.

5         Do you understand that?

6         THE DEFENDANT:    Yes, ma'am.

7         THE COURT:    During the trial, the witnesses for the

8    prosecution would have to come to court and testify in your

9    presence where you could see them and hear them and your lawyer

10   could cross-examine them.

11        If you wanted to, your lawyer could offer evidence on

12   your behalf.  You would be able to use the Court's power to

13   compel witnesses to come to court and testify truthfully in

14   your defense even if they didn't want to come.

15        Do you understand that?

16        THE DEFENDANT:    Yes, ma'am.

17        THE COURT:    At trial you would have the right to

18   testify if you wanted to, but you would also have the right not

19   to testify.  If you chose not to testify, that could not be

20   used against you in any way.  So no inference or suggestion of

21   guilt could be made from the fact that you chose not to

22   testify.

23        Do you understand that?

24        THE DEFENDANT:    Yes, ma'am.

25        THE COURT:    At trial and at every stage of your case,

1    you would be entitled to be presented by an attorney.  If you

2    could not afford an attorney, one would be appointed at public

3    expense free of cost to represent you.

4              Do you understand that?

5              THE DEFENDANT:    Yes, ma'am.

6              THE COURT:    As I said before, you have the right to

7    plead not guilty.  So even as you sit here right now for

8    purposes of entering a guilty plea, you have the right to

9    change your mind and go to trial.  But, if you do plead guilty

10   and I accept your plea, there will be no trial, and you'll be

11   giving up your right to trial and the other rights that I just

12   described.

13             Do you understand that?

14             THE DEFENDANT:    Yes, ma'am.

15             THE COURT:    If you plead guilty, all that will remain

16   to be done is for me, for the Court, to impose sentence.  I'm

17   going to enter a judgment of guilty.  I'm going to sentence you

18   based on whatever submissions I get from you and your attorney

19   as well as the government and a presentence report prepared by

20   the probation department.

21             There won't be an appeal with respect to whether the

22   government could use the evidence it has against you or with

23   respect to whether you did or did not commit the crime.

24             Do you understand that?

25             THE DEFENDANT:    Yes, ma'am.

1          THE COURT:    If you plead guilty, do you also

2     understand that you'll have to give up your right not to

3     incriminate yourself?  Because I'll ask you questions here in

4     court today in order to ensure that you are in fact guilty as

5     charged.

6          Do you understand that?

7          THE DEFENDANT:    Yes, ma'am.

8          THE COURT:    So now I understand that you seek to plead

9     guilty to Count One of the superseding information as we

10    discussed, and it charges you with participating in a Hobbs Act

11    robbery in violation of 18 U.S. Code, Section 1951.

12         Do you understand that?

13         THE DEFENDANT:    Yes, ma'am.

14         THE COURT:    There's also --

15         MR. DE VITA:    Excuse me, your Honor.  Just for the

16    record, it's attempted robbery.

17         THE COURT:    Attempted robbery.

18         MS. MAIMAN:    In the information, your Honor, it's an

19    attempted robbery.

20         THE COURT:    Yes.  I see.

21         Do you understand that if you were to -- why don't I

22    actually ask the government to state the elements of the

23    offense in question.

24         MS. MAIMAN:    Certainly, your Honor.  If this case

25    proceeded to trial, the government would have to prove the

1    following beyond a reasonable doubt:

2                    Namely, that the defendant, on or about the date

3    stated in the superseding information, attempted to rob another

4    person of property from or that individual by force, threat, or

5    intimidation and also that the attempted robbery affected

6    interstate commerce.

7                    THE COURT:    Just in the "to wit" clause, you indicated

8    that Thomas robbed an individual believed to be engaged in

9    narcotics trafficking.

10                   MS. MAIMAN:    That's true, your Honor.  One moment.

11    May I just consult?

12                   THE COURT:    Sure.

13                   (Pause)

14                   THE COURT:    The language regarding "attempt" is

15    clearly elsewhere in the charge.

16                   MR. DE VITA:    Yes, your Honor.  I think we can proceed

17    on the indictment as it stands.  I think it was clear that it

18    was a robbery that was not fulfilled, but it was clearly an

19    attempt.

20                   MS. MAIMAN:    If the defense has no objection to it, we

21    are prepared to move forward, unless the Court wishes us to

22    make a change, we can do that.

23                   THE COURT:    No.  I think as long as it's clear for the

24    record that it's the same charge itself.  It's just that the

25    "to wit" clause sounds like it's a little bit inaccurate.  If

1    he is pleading guilty to the attempted robbery, I think that

2    that's sufficient.

3            MR. DE VITA:    Yes, your Honor.  I think they both are

4    covered by the same subsection of the Hobbs Act.

5            THE COURT:    They are, and you've also charged Section

6    2.  So I think that that's sufficient.  I just wanted to make

7    sure that we're all on the same page.

8            MR. DE VITA:    Yes, your Honor.

9            THE COURT:    Mr. Thomas, do you understand that if you

10   were to go to trial, the government would have to prove the

11   elements that the prosecutor just outlined and prove them all

12   beyond a reasonable doubt?

13           THE DEFENDANT:    Yes, ma'am.

14           THE COURT:    Now what I'm going to do is I'm going to

15   discuss the maximum penalties with you.  The "maximum" means

16   the most that could possibly be imposed.  It doesn't

17   necessarily mean that that's the sentence you will receive, but

18   you have to understand that by pleading guilty, you'll be

19   exposing yourself to the possibility of receiving any

20   punishments up to the maximums that I'm going to describe.

21           Okay?  Do you understand that?

22           THE DEFENDANT:    Yes, ma'am.

23           THE COURT:    So with respect to your liberty, the

24   maximum term of imprisonment for this crime is 20 years in

25   prison.

1          Do you understand that?

2          THE DEFENDANT:    Yes, ma'am.

3          THE COURT:    And the maximum term of supervised release

4    is three years.

5          Do you understand that?

6          THE DEFENDANT:    Yes, ma'am.

7          THE COURT:    Supervised release means that if you're

8    sentenced to prison, after your release from prison, you'll be

9    subject to the supervision of the probation department.  You'll

10    be required to obey certain rules.  If you violate those rules,

11    you could be returned to prison without a jury trial to serve

12    additional time, even beyond your original sentence.

13          Do you understand that?

14          THE DEFENDANT:    Yes, ma'am.

15          THE COURT:    You should also understand that there's no

16    parole in the federal system.  If you're sentenced to prison,

17    you will not be released early on parole, although there's a

18    limited opportunity to earn credit for good behavior.

19          Do you understand that?

20          THE DEFENDANT:    Yes, ma'am.

21          THE COURT:    In addition to these restrictions on your

22    liberty, the maximum punishment for this crime also includes

23    certain financial penalties.  The maximum allowable fine is

24    $250,000 or twice the gain you received from the crime or twice

25    the loss to any victim, whichever is greater.

1          I'm also required to impose a mandatory special

2    assessment of $100, as well as restitution to any persons or

3    entities injured as a result of your conduct.  And I can order

4    you to forfeit all property derived from the offense or used to

5    facilitate the offense.

6          Do you understand all of that?

7          THE DEFENDANT:    Yes, ma'am.

8          THE COURT:    So those are the maximum penalties for

9    this crime.

10          Is the defendant now serving a state or federal

11    sentence or being prosecuted by the state?

12          MS. MAIMAN:    Yes, he is, your Honor.  He's serving a

13    federal sentence that was previously imposed in this district

14    of 228 months in prison.

15          THE COURT:    So you should know, Mr. Thomas, that any

16    sentence that you receive in this case can be imposed to run

17    consecutively, meaning on top of, the other sentence that you

18    received.

19          Do you understand that?

20          THE DEFENDANT:    Yes, ma'am.

21          THE COURT:    Now, the punishments that I've just

22    described may be part of a sentence, but being convicted of a

23    felony may have other consequences.

24          You are a United States citizen; is that correct?

25          THE DEFENDANT:    No, ma'am.

1           MR. DE VITA:    He's not, your Honor.

2           THE COURT:    Then you should understand that as a

3   result of your guilty plea, you may be removed from the

4   United States.  And, in certain circumstances, removal may be

5   likely or even mandatory.

6           Do you understand that?

7           THE DEFENDANT:    Yes, ma'am.

8           THE COURT:    Do you also understand that in the future,

9   you may be denied citizenship or admission into the

10  United States as a result?

11          THE DEFENDANT:    Yes, ma'am.

12          THE COURT:    Did you discuss the possible immigration

13  consequences of your plea with your attorney?

14          THE DEFENDANT:    Yes, ma'am.

15          THE COURT:    Now, in imposing sentence, federal judges

16  are required to consider the recommendations of the Federal

17  Sentencing Guidelines.  The Federal Sentencing Guidelines are a

18  complicated set of rules for determining an appropriate

19  sentence.

20          Although at one point they were mandatory, meaning

21  judges were required to follow those recommendations, now they

22  are only advisory.  But the judges must take into account the

23  sentencing guidelines when determining a sentence but in the

24  end give the sentence that the judge believes best satisfies

25  the purposes of the criminal law, and they are set forth in a

1  provision of the law -- it's 18 U.S. Code, Section 3553(a) --

2  even if that's higher or lower than the guidelines

3  recommendation.

4              Do you understand that?

5              THE DEFENDANT:    Yes, ma'am.

6              THE COURT:    Have you discussed the sentencing

7  guidelines with your attorney?

8              THE DEFENDANT:    Yes, ma'am.

9              THE COURT:    Do you understand that they are only

10  recommendations to the Court?

11              THE DEFENDANT:    Yes, ma'am.

12              THE COURT:    I understand that you have entered into a

13  written plea agreement with the government, and I have a draft

14  of that agreement.  I'm going to mark this as Court Exhibit 2.

15  It's a May 4 letter addressed to Mr. De Vita and signed by

16  Ms. Maiman, as well as a supervisor in her office.

17              Is that your signature on the last page?

18              THE DEFENDANT:    Yes, ma'am.

19              THE COURT:    Did you read the agreement before you

20  signed it?

21              THE DEFENDANT:    Yes, ma'am.

22              THE COURT:    Did you discuss it with your attorney?

23              THE DEFENDANT:    Yes, ma'am.

24              THE COURT:    I realize it's a long document, and it

25  contains some technical legal language.  But, after discussing

1    it with your attorney, do you understand all the terms of this

2    agreement?

3            THE DEFENDANT:    Yes, ma'am.

4            THE COURT:    So I'm just going to go over a few of the

5    terms with you.  I see that you and the government have agreed

6    that the appropriate guideline sentence range in this case is a

7    sentence of 20 years in prison because the guidelines range is

8    actually above the statutory maximum.  So the stipulated

9    guidelines range sentence in this case is 20 years in prison.

10            Do you understand that?

11            THE DEFENDANT:    Yes, ma'am.

12            THE COURT:    That means that neither you nor the

13    government can argue for a different guidelines calculation,

14    although you can seek a sentence outside that range.

15            Does that make sense?

16            THE DEFENDANT:    Yes, ma'am.

17            THE COURT:    You should understand though that this

18    agreement does not bind me in any way.  I'm required to make my

19    own independent calculation of the guidelines and to impose a

20    sentence based on what I believe is appropriate in your case.

21            Do you understand that?

22            THE DEFENDANT:    Yes, ma'am.

23            THE COURT:    Now, under the agreement, you also admit

24    to the forfeiture allegation with respect to Count One of the

25    superseding indictment.

1          Do you understand that?

2          THE DEFENDANT:    Yes, ma'am.

3          THE COURT:    Do you understand as well that under this

4   agreement, you're giving up your right to appeal or otherwise

5   challenge your sentence as long as I sentence you to 20 years

6   of imprisonment or less?

7          So if I sentence you to more than 20 years, you have

8   the right to appeal your sentence.  And if I sentence you to 20

9   years or less, you cannot appeal it under this agreement.

10         Do you understand that?

11         THE DEFENDANT:    Yes, ma'am.

12         THE COURT:    And do you also understand that under this

13  agreement you cannot collaterally attack or otherwise challenge

14  your conviction or sentence, including by filing an action

15  under certain provisions of the law, including 28 U.S. Code,

16  Sections 2255 and 2241?

17         Do you understand that?

18         THE DEFENDANT:    Yes, ma'am.

19         THE COURT:    Do you also understand that under this

20  agreement, you're waiving other rights of appeal, including the

21  right to appeal your plea or conviction based on the

22  government's failure to disclose any exculpatory or other

23  discovery material that was not produced before the date of

24  your agreement?

25         Do you understand that?

1              THE DEFENDANT:    Yes, ma'am.

2              THE COURT:    Does this written plea agreement

3    constitute the entirety of your agreement with the government?

4    I mean, is this it?  Is this your whole agreement?  There's

5    nothing else other than this agreement; is that right?

6              THE DEFENDANT:    Yes, ma'am.

7              THE COURT:    Did you willingly sign the plea agreement?

8              THE DEFENDANT:    Yes, ma'am.

9              THE COURT:    Did anyone threaten, bribe, or force you

10    to sign the plea agreement or to plead guilty?

11             THE DEFENDANT:    No, ma'am.

12             THE COURT:    Other than what's in the plea agreement,

13    has anyone offered you any inducement to plead guilty?

14             THE DEFENDANT:    No, ma'am.

15             THE COURT:    Has anyone made a promise to you as to

16    what your sentence will be?

17             THE DEFENDANT:    No, ma'am.

18             THE COURT:    You should understand, of course, that if

19    anyone attempted to predict what your sentence will be, that

20    their prediction could be wrong.

21             Do you understand that?

22             THE DEFENDANT:    Yes, ma'am.

23             THE COURT:    So even if your sentence is different from

24    what you may have expected or someone predicted, once you've

25    pleaded guilty, you won't be allowed to withdraw your plea.

1          Do you understand that?

2          THE DEFENDANT:    Yes, ma'am.

3          THE COURT:    So now that you've been advised of the

4    charges against you and the possible penalties you face as well

5    as the rights you're giving up, is it still your intention to

6    plead guilty?

7          THE DEFENDANT:    Yes, ma'am.

8          THE COURT:    So now I'm going to ask you the official

9    question with respect to Count One of the superseding

10   indictment.

11         How do you plead to that charge?

12         THE DEFENDANT:    Guilty.

13         THE COURT:    I'm sorry.  As to the superseding

14   information.

15         THE DEFENDANT:    Guilty, ma'am.

16         THE COURT:    Do you admit or deny the forfeiture

17   allegation in the superseding information?

18         THE DEFENDANT:    Yes.  I'll admit to what happened.

19         THE COURT:    And to the forfeiture allegation.  Is that

20   right?

21         THE DEFENDANT:    Yes, ma'am.

22         THE COURT:    So tell me, in your own words, what you

23   did that makes you believe that you're guilty of this crime.

24         MR. DE VITA:    Your Honor, Mr. Thomas and I have

25   collaborated, and we have prepared a written statement to read

1    to the Court.

2         THE COURT:    You can read a statement to me,

3    Mr. Thomas.

4         THE DEFENDANT:    In October 2007, I participated with

5    one or another person in an attempted robbery at 3140 Decatur

6    Avenue in The Bronx where we believed drugs were being sold.

7         During the course of the robbery, shots were fired and

8    the victim, who I now know to be Jermaine Pratt, was hit.  We

9    ran from the scene after the shot was fired.

10        THE COURT:    Is the defendant contesting the interstate

11   element?

12        MR. DE VITA:    Yes, your Honor.  I think the

13   understanding being a drug scene provides the interstate

14   commerce connection.

15        THE COURT:    Are there any additional questions the

16   government would like me to ask?

17        MS. MAIMAN:    No, your Honor.  Just to clarify -- I

18   don't think there's any dispute about this -- when the

19   defendant says shots were fired, it was a coconspirator of the

20   defendant who shot the victim in this case.

21        THE COURT:    Thank you.  Could you please summarize

22   what the government's evidence would be if you were to go to

23   trial.

24        MS. MAIMAN:    Certainly.  If this case went to trial,

25   the government would prove through DNA evidence and the

1    testimony of cooperating witnesses, eyewitnesses, and physical

2    evidence, as well as law enforcement testimony, that on the

3    date named in the superseding information, the defendant and

4    another individual went to the home of Jermaine Pratt in order

5    to steal drugs from Mr. Pratt and others.

6              During the attempted robbery, the victim fought back

7    and actually shot Mr. Thomas by accident.  During the attempted

8    robbery as well, Mr. Thomas' coconspirator shot and killed

9    Mr. Pratt.

10             THE COURT:    Thank you.

11             Do the government and defense counsel agree that

12   there's a sufficient factual predicate for a guilty plea?

13             MS. MAIMAN:    Yes, your Honor.

14             MR. DE VITA:    Yes, your Honor.

15             THE COURT:    Mr. De Vita, do you know of any valid

16   defense that would prevail at trial?

17             MR. DE VITA:    No, your Honor.

18             THE COURT:    Mr. Thomas, because you acknowledge that

19   you are in fact guilty as charged in the superseding

20   information and because I'm satisfied that you're aware of your

21   rights, including your right to go to trial; you're aware of

22   the consequences of your plea, including the sentence which may

23   be imposed; and because I find that you are knowingly and

24   voluntarily pleading guilty, I accept your guilty plea to Count

25   One of the superseding information.

1              As I mentioned, the probation department is going to

2     prepare a presentence report, and they're going to want to

3     interview you in connection with the presentence report.

4              Mr. De Vita, would you like to be present?

5              MR. DE VITA:    Yes, I would, your Honor.

6              THE COURT:    I order that it not take place without

7     your presence.

8              If you do choose to speak to the probation department,

9     Mr. Thomas, please make sure everything you say is truthful and

10    accurate.  I'm going to read the presentence report very

11    carefully.  It will assist me in deciding what sentence to

12    impose.

13             You and your lawyer will have the opportunity to

14    object to it both in advance of and at sentencing.  So if there

15    are any mistakes in it, please let your lawyer know so they can

16    be raised with me.

17             Is September 9 at 10:00 okay for sentencing?

18             MR. DE VITA:    That's fine, your Honor.

19             MS. MAIMAN:    That's fine for the government.

20             THE COURT:    So 10:00 on September 9.  The government

21    shall provide the probation officer with its factual statement

22    within one week, and defense counsel shall arrange for

23    defendant to be interviewed within the next two weeks.

24             I'm just going to ask counsel to look at my individual

25    rules and practices in criminal cases.  Consistent with those

1    rules, defense submissions are due two weeks prior to

2    sentencing, and the government's submission one week prior to

3    sentencing.

4              If the government is seeking forfeiture, you're to

5    submit a preliminary order of forfeiture sufficiently in

6    advance of sentencing so we can address any issues.  The

7    defendant shall remain in custody pending sentence.

8              Are there any additional applications?

9              MS. MAIMAN:    No, your Honor.  I just wanted to note

10   one other matter with respect to the plea, that the defendant

11   is waiving any objections on the statute of limitations ground

12   because this murder did take place in 2007.  I just want to

13   make sure he understands.

14             MR. DE VITA:    That's correct, your Honor.  That's set

15   forth in the plea agreement as well.

16             THE COURT:    Okay.  Good.  Anything else?

17             MS. MAIMAN:    Not from the government.  Thank you.

18             MR. DE VITA:    Not from the defense, your Honor.

19             THE COURT:    Thank you.  Have a good weekend.

20             (Adjourned)

21

22

23

24

25