UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

DWAYNE THOMAS,

Defendant.

No. 15-CR-740 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Petitioner Dwayne Thomas, proceeding *pro se*, brings this motion pursuant to 18 U.S.C.

§ 3582, seeking a reduction in his sentence to time served. For the reasons set forth below,

Thomas's motion is denied.

## BACKGROUND

On October 5, 2007, when Thomas was twenty years old, he participated in an attempted

robbery that resulted in the murder of twenty-five-year-old Jermaine Pratt. Although Thomas did

not shoot Pratt, he brought a gun to the attempted robbery and pointed it at the victim.

Presentence Investigation Report ("PSR") ¶ 8, ECF No. 31; Tr. 20, 24, ECF No. 69. Pratt then

struggled with Thomas for control of his gun, leading Thomas's accomplice to shoot and kill the

victim. PSR ¶ 8. On May 6, 2016, Thomas pled guilty pursuant to a plea agreement to attempted

Hobbs Act robbery. Tr. 3, ECF No. 69. Count 1 of the Information carried a statutory maximum

sentence of twenty years, or 240 months. *Id.* at 6. On April 13, 2017, this Court sentenced

Thomas to a term of imprisonment of the statutory maximum, followed by a term of three years

of supervised release. *Id.* at 26–27.

Thomas was then and continues to serve a separate federal sentence of nineteen years, or

228 months. Judge William H. Pauley III imposed the prior sentence on October 31, 2014 for

offenses Thomas committed as part of an armed robbery crew between 2008 and 2012. *See generally United States v. Thomas*, 12-CR-174 (WHP), ECF No. 196. This crew carried loaded weapons and threatened its victims with torture if they did not comply. *See id.*, Tr. 616, ECF No. 98.

At Thomas's sentencing in April 2017, this Court ordered that 60 months of his 240-month sentence would run concurrently to his prior sentence, and 180 months would run consecutively. Tr. 29, ECF No. 69. In total, Thomas was sentenced to 408 months imprisonment, or thirty-six years. The Bureau of Prisons has projected a release date of February 8, 2041. Opp'n 2, ECF No. 109.

On December 8, 2020, the Court received Thomas's first motion for compassionate release, citing health complications resulting from his contraction of COVID-19. *See* Mot. 2–3, ECF No. 75. The Court denied Thomas's motion on February 10, 2021, finding that the 18 U.S.C. § 3553(a) factors did not support a reduction of Thomas's sentence. Op. & Order 4, ECF No. 81. The Court concluded that "terminating [his] sentencing now would fail to reflect the seriousness of his offense and could subject the public to risk." *Id.* at 4–5.

In a motion docketed March 20, 2023, Thomas moved to vacate his sentence pursuant to 28 U.S.C. § 2255. *See* Mot., ECF No. 88. This Court denied the motion on July 23, 2024, finding that *United States v. Taylor*, 596 U.S. 845 (2022), did not invalidate his conviction for Hobbs Act robbery, as Thomas argued. *See* Op. & Order 4, ECF No. 103.

Thomas filed the instant motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) on March 5, 2025. *See generally* Mot., ECF No. 106. He argues that extraordinary and compelling circumstances justify a reduction in sentence—principally, the conditions of incarceration during the COVID-19 pandemic; his poor health; the declining health

of his father, for whom Thomas wishes to act as caregiver; his "exemplary" prison record; and changes in state and federal law. *Id.*; *see also* Reply, ECF No. 110. The Government opposes, disputing the existence of extraordinary and compelling reasons and arguing that the § 3553(a) factors do not warrant the early termination of his sentence. *See* Opp'n, ECF No. 109.

## LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(c), a district court may modify a defendant's term of imprisonment upon his motion (1) "after the defendant has fully exhausted all administrative rights to appeal," and (2) "after considering the factors set forth in section 3553(a)," if the court finds (3) that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). In determining whether a sentence reduction is warranted, the district court must consider whether the petitioner has "demonstrate[d] that his circumstances are indeed 'extraordinary and compelling' such that . . . a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed." *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021). It is the defendant's burden to demonstrate that he is entitled to a sentence reduction. *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

Although § 3582 previously required the Bureau of Prisons ("BOP") to commence a compassionate release proceeding, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam). "[B]efore November 1, 2023, the Sentencing Commission's only guidance" with respect to what constituted extraordinary and compelling circumstances, however, "had been promulgated prior to the enactment of the First Step Act." *United States v. Mason*, No. 21 Cr. 499 (PAE), 2025 WL 1404626, at *2 (S.D.N.Y. May 15,

2025).  In 2020, the Second Circuit concluded that the Sentencing Commission's guidance enumerated in U.S.S.G. § 1B1.13 applied only to compassionate release motions brought by the BOP and was "not 'applicable' to compassionate release motions brought by defendants." *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). Thus, the Second Circuit held, this guidance did not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *Id.*

"Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions." *Mason*, 2025 WL 1404626, at *3 (citing U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023)). Contrary to the Government's position, *see* Opp'n 3, the Court thus finds that this "amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release motion, however initiated," *Mason*, 2025 WL 1404626, at *3. Section 1B1.13 provides that a district court may grant a sentence reduction after considering the § 3553 factors if it finds that (1) "[e]xtraordinary and compelling reasons warrant the reduction"; (2) "[t]he defendant is not a danger to the safety of any other person or to the community"; and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13(a). The Sentencing Commission also enumerated circumstances that constitute extraordinary and compelling reasons, as set forth where relevant below.

## DISCUSSION

It is undisputed that Thomas has exhausted his administrative rights to appeal. The parties dispute, however, whether extraordinary and compelling circumstances exist and whether the § 3553(a) factors warrant a reduction in his sentence. Having considered the parties' submissions and the pertinent statutory factors, the Court denies Thomas's motion.

4

I.     **Section 3553(a) Factors**

As the Second Circuit has explained, "a finding that the § 3553(a) factors do not favor early release is independently sufficient to deny a compassionate-release motion, regardless of the existence of extraordinary and compelling reasons." *United States v. DiMartino*, No. 21-81-cr, 2022 WL 761511, at *2 (2d Cir. Mar. 14, 2022) (summary order) (citing *Keitt*, 21 F.4th at 71). Pursuant to § 3553(a), a district court must "impose a sentence sufficient, but not greater than necessary," (1) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (2) "to afford adequate deterrence," (3) "to protect the public from further crimes of the defendant," and (4) "to provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). In determining the appropriate sentence, the court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

For substantially the same reasons the Court provided in denying Thomas's prior compassionate release motion, the Court finds that the § 3553 factors weigh against a reduction in Thomas's sentence. Thomas's participation in a robbery resulted in the death of another person. Although Thomas did not shoot the gun that caused Pratt's death, he nonetheless "took a life." Tr. 24, ECF No. 69. Thomas, moreover, has a history of participating in violent crimes. For four years after Pratt's death, he participated in armed robberies that "terrorized a community" in the Bronx. *Id.* at 8. Reduction of his sentence at this time, when Thomas has yet to serve half of his 240-month term of imprisonment, would neither reflect the seriousness of his offense nor promote adequate deterrence. For these reasons, the Court finds that the § 3553 factors require the Court to deny Thomas's petition.

II.     **Extraordinary and Compelling Reasons**

Thomas has also not provided extraordinary and compelling reasons that warrant a

reduction in his sentence at this time. Thomas argues, first, that his health conditions and the

severity of confinement during the COVID-19 pandemic justify a sentence reduction. There is no

question that lockdowns imposed during the pandemic created "unavoidably[] more punishing"

conditions. *United States v. McRae*, No. 17-CR-643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y.

Jan. 15, 2021). While the Court is sympathetic to Thomas's claim that he is suffering from

"Long Covid"—particularly in light of his pre-existing diagnosis of asthma—Thomas has not

submitted any supporting evidence to demonstrate that he is suffering a "terminal illness"; a

"serious physical or medical condition . . . that substantially diminishes the ability of the

defendant to provide self-care within the environment of a correctional facility and from which

he . . . is not expected to recover"; or a "medical condition that requires long-term or specialized

medical care" that his detention facility cannot provide, and the absence of which risks his

"serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1) (explaining that these factors

constitute extraordinary and compelling reasons). "Even assuming [Thomas's] conditions require

long-term or specialized care, the presence of a health condition requiring long-term or

specialized care does not by itself establish an extraordinary and compelling circumstance

warranting a sentence reduction" without evidence that "the BOP is unable to care for an inmate

with those conditions." *United States v. Radulescu*, No. 19-cr-651, 2024 WL 4200388, at *1

(S.D.N.Y. Sept. 16, 2024); *see also United States v. Acosta*, No. 17-CR-487 (KMW), 2025 WL

733250, at *2 (S.D.N.Y. Mar. 7, 2025) (finding petitioner's claim "that he suffers from ongoing

respiratory health issues resulting from COVID-19 . . . [did] not demonstrate an extraordinary

and compelling reason" because where there was "nothing to suggest that [his] asserted long-

COVID symptoms place[d] him at risk of 'serious deterioration in health or death' or [were] incapable of treatment while in BOP custody"). Accordingly, neither Thomas's detention during the pandemic nor his health conditions presently constitute extraordinary and compelling reasons that warrant a reduction in sentence.

Second, Thomas argues that he has an "exemplary prison record," Mot. 5, ECF No. 106, demonstrating his rehabilitation and supporting his request for a sentence reduction. Contrary to Thomas's assertions, however, the Government contends that BOP records show he possessed a weapon in August 2021—although the Government has not submitted supporting documentation to the Court. *See* Opp'n 4 (citing "Ex. A," although no such exhibit is attached). In any event, as Thomas acknowledges, rehabilitation alone is insufficient to warrant a sentence reduction. *See Brooker*, 976 F.3d at 238; U.S.S.G. § 1B1.13(d); Mot. 5, ECF No. 106. The Court nonetheless commends Thomas for the efforts he has undertaken toward rehabilitation.

Third, Thomas reports that his father had a serious stroke, which left him paralyzed, and that Thomas is the sole caretaker available to care for him. Section 1B1.13(b) provides that "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" may constitute an extraordinary and compelling circumstance. U.S.S.G. § 1B1.13(b)(3)(C). To satisfy this provision, "courts generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions, before concluding that an extraordinary and compelling reason has been established." *United States v. Lindsey*, No. 13-cr-271 (LTS), 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (quoting *United States v. Ayala*, No. 16-CR-809 (VM), 2020 WL 6626015, at *1 (S.D.N.Y. Nov. 12, 2020)) (internal quotation marks omitted). Thomas has not made such a showing here. His "argument is also undercut by the probability that he would

return to [Jamaica]" after his release, whereas Thomas's father, to the Court's knowledge, resides in the United States. *United States v. Francisco-Ovalle*, No. 18 Cr. 526 (AJN), 2021 WL 123366, at *3 (S.D.N.Y. Jan. 13, 2021); *see* PSR ¶¶ 37, 40 (noting that Thomas's father lives in the United States and Thomas has an outstanding warrant of removal pending); Mot. 10, ECF No. 106 (noting that Thomas anticipates his removal to Jamaica). While the Court is sympathetic to Thomas's desire to care for his father, he has not established circumstances that warrant a sentence reduction.

Fourth, Thomas argues that a reduction is warranted under U.S.S.G. § 1B1.13(b)(6). Subsection (b)(6) of the policy statement provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

Thomas asserts that a sentence reduction is warranted because his sentence is unusually long, he has served more than ten years imprisonment, he would have received a shorter sentence under intervening changes in law, and his sentence is higher than the sentences of others who have committed more serious offenses. As an initial matter, the Court disagrees that Thomas—in light of his criminal history, the circumstances and harm caused by the offense, and his Guidelines range—is serving an unusually long sentence.

Thomas also argues that Amendment 829 to the Guidelines, enacted in 2024, may have resulted in him receiving a downward departure at sentencing. Mot. 8, ECF No. 106; Reply 3. Amendment 829 provides that a downward departure may be warranted due to a defendant's youthfulness of the time of the offense or prior offenses. *See* U.S.S.G. § 5H1.1. The Amendment

is not, however, retroactive. *United States v. Parrot*, No. 21-CR-691 (RMB), 2025 WL 995398, at *2 (S.D.N.Y. Apr. 3, 2025). Even if U.S.S.G. § 1B1.13(b)(6) applied, a non-retroactive change to the Guidelines Manual is not among the changes in law that may be considered. U.S.S.G. § 1B1.13(b)(6) ("a change in the law (*other than an amendment to the Guidelines Manual that has not been made retroactive*) may be considered" (emphasis added)); *see also id.* at § 1B1.13(c) ("[e]xcept as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered").  Furthermore, the Court was presented with evidence of and considered Thomas's age at the time of the offense during sentencing. Tr. 13, 18, ECF No. 69.

Thomas next argues that the New York Clean Slate Law would have resulted in his receipt of a lower sentence, because his prior convictions in New York would have been "wiped clean." Mot. 8, ECF No. 106. The Clean Slate Act provides for the "automatic sealing of certain misdemeanor and felony convictions," *Robinson v. MSG Ent. Gr., LLC*, No. 23-cv-9366 (LJL), 2024 WL 3938361, at *7 (S.D.N.Y. Aug. 26, 2024), but does not prevent courts from considering these records at sentencing, *see* N.Y. Crim. Proc. § 160.57(1)(d)(ii).

Thomas identifies two cases in which compassionate release was granted after the defendant committed what Thomas describes as "far more violent, far more heinous" crimes than his. Mot. 7, ECF No. 106. The facts of those cases, however, are distinguishable from the those of the instant petition. In both cases where compassionate release was granted, the defendants had been incarcerated for approximately three decades, presented with serious health conditions, and had a strong record of rehabilitation, suggesting each defendant presented a low risk of recidivism or danger to the public. *See United States v. Monteleone*, No. 92-CR-351 (ARR), 2023 WL 2857559 at *3–*4 (E.D.N.Y. April 10, 2023) (granting compassionate release to an 83-

year-old petitioner with serious medical conditions, who had been incarcerated for 29 years and had a "strong record" demonstrating his rehabilitation); *United States v. Underwood*, No. 88-Cr-822 (SHS), 2021 WL 3204834, at *1 (S.D.N.Y. January 15, 2021) (granting compassionate release to a defendant who had served three decades incarcerated, had an "exceptional record of rehabilitation and service," was 67, and had tested positive for COVID-19 in the winter of 2021). Accordingly, Thomas's circumstances do not warrant a sentence reduction under § 1B1.13(b)(6).

Fifth, Thomas argues that the Assistant U.S. Attorney assigned to both his federal cases committed prosecutorial misconduct and that he has a meritorious vindictive prosecution claim. This is not, however, a basis for compassionate release. *Cf. United States v. Fernandez*, 104 F.4th 420, 427 (2d Cir. 2024) ("[T]he validity of a conviction or sentence can be challenged only on direct appeal or collateral review, which have specifically calibrated procedural limitations. Permitting such challenges as cognizable 'extraordinary and compelling reasons' on a motion for compassionate release would circumvent the procedural limitations of direct and collateral review . . . .").

Finally, Thomas notes that he did not receive credit against this Court's sentence for the 62 months he had been in custody as of the date of his sentencing, from February 2012 to April 2017. Pursuant to 18 U.S.C. § 3584, "[m]ultiple terms of imprisonment . . . shall be treated for administrative purposes as a single, aggregate term of imprisonment." The BOP has advised this Court that Thomas therefore received credit for this 62-month period of detention against his total 408-month term of imprisonment.

Accordingly, the Court finds that Defendant has not identified an extraordinary or compelling circumstance or combination of circumstances warranting a reduction in sentence at this time.

## CONCLUSION

For the foregoing reasons, Thomas's motion is denied. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 106 and to mail a copy of this opinion and order to Thomas.

SO ORDERED.

Dated:        June 4, 2025
              New York, New York

                                            _____
                                            Ronnie Abrams
                                            United States District Judge